**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

ROBERT MILIE, et. al.,

               Plaintiffs,

     v.

CITY OF SAVANNAH,

               Defendant.

CIVIL ACTION NO.: 4:18-cv-117

**O R D E R**

    This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees and Costs, (doc. 43).  Plaintiffs are fourteen[1] current or former firefighters with Defendant City of Savannah's "Fire and Emergency Services" department.[2]  (Doc. 1.)  In their Complaint, Plaintiffs alleged that Defendant violated Section 207(o)(5) of the FLSA by improperly denying their requests to use their accrued compensatory leave time, entitling them to damages, declaratory relief, and attorneys' fees and costs.  (See id.)  The parties negotiated an "FLSA Settlement and Release Agreement," (doc. 41-1), and filed a Joint Motion to Approve FLSA Settlement, (doc. 41).  The Court granted the parties' Motion on August 19, 2019, (doc. 42), and Plaintiffs subsequently filed the at-issue Motion for Attorneys' Fees and Costs, (doc. 43).  Defendant filed a Response, (doc. 44), Plaintiffs filed a Reply, (doc. 46), Defendant filed a Surreply, (doc. 48), and Plaintiffs filed a Sur-surreply, (doc. 50).  For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion, (doc. 43).

---

[1]  The number of Plaintiffs was reduced from eighteen to fourteen when the Court granted the parties' Stipulations of Dismissal as to four previously-named parties.  (Docs. 25, 28, 29.)

[2]  The Court previously noted that while Plaintiffs identified Defendant as the City of Savannah, the correct legal name of Defendant is "the Mayor and Aldermen of the City of Savannah."  (See doc. 42, p. 1 n.1.)

## BACKGROUND

Plaintiffs brought claims against the City of Savannah to challenge the City's deprivation of their right to use "accrued compensatory time" under the FLSA.  (Doc. 1, pp. 4–5.)  Plaintiffs alleged that the City often denied their requests to use their accrued time under the justification that approval would "require [an] overtime [payment] to another employee."  (Id. at p. 5.) Plaintiffs argued that this conduct violated Section 207(o)(5) of the FLSA, which provides that "an employee of a public agency who has accrued compensatory time off . . . 'shall be permitted to use such time within a reasonable period after making [a] request . . . .'"  (Id. at p. 7.)  The Complaint requested "full compensatory relief," "liquidated damages in an amount equal to [Plaintiffs'] back pay damages," and "attorney's fees and costs."  (Id. at pp. 8–9.)

The parties were eventually able to negotiate a settlement agreement (hereinafter the "Agreement"), and on August 2, 2018, the parties filed a Joint Motion to Approve FLSA Settlement, (doc. 41).  In the Agreement, the parties agreed on a new fire department policy that addressed the use of compensatory time.  (See doc. 41-1; doc. 43-1, p. 3.)  The policy delineated how and when firefighters were to properly submit requests to use compensatory time and dictated the circumstances under which a request could be denied.  (Doc. 43-1, pp. 3–4.)  The City also agreed to pay each of the remaining fourteen Plaintiffs "the equivalent of two overtime shifts," amounting to a little over $1,000 each ($15,625.44 total), and Plaintiffs were allowed to retain all of their previously accrued compensatory time for future use.  (Id. at pp. 4–5; doc. 44, p. 2.) Plaintiffs agreed to forego the originally-requested liquidated damages and agreed to release Defendant

> from any and all claims, damages, demands obligations costs, expenses, attorneys'
> fees . . . arising out of the FLSA . . . as of and including the effective date of this
> Agreement, as related to Plaintiffs' employment with Defendant, including . . . any

attorneys' fees and expenses that Plaintiff may be entitled to under the FLSA . . .
including the claims in [this] Action.

(Doc. 41-1, pp. 3–4.)  The parties also agreed that Defendant would pay Plaintiffs' "reasonable

attorneys' fees and expenses" in an amount to be determined by the Court.  (Id. at pp. 2–3.)

In its Order granting the parties' Motion to Approve, the Court analyzed the Agreement

and found it be fair and reasonable.  (Doc. 42.)  In so doing, the Court, in relevant part, made the

following observations about the parties' dispute and the reasonableness of the Agreement:

- The Eleventh Circuit Court of Appeals had yet to offer a "clear answer" as to the proper
  interpretation of Section 207(o)(5)(B), and, due to a split among other Circuits, the parties
  "disagree[d] on the proper interpretation" and "whether Defendant ha[d] violated that
  provision."

- The agreed-upon financial compensation was fair in light of the fact that, "despite the
  allegations in the Complaint, certain Plaintiffs did receive compensatory time-off, other
  Plaintiffs had not accrued any compensatory time-off (and therefore were not entitled to use
  any), other Plaintiffs never requested it, and still other Plaintiffs . . . never submitted a
  written request [for compensatory time-off] per City policy."  Indeed, "discovery revealed
  risks that some of all Plaintiffs may recover very little or nothing at all."

- Only one pre-suit complaint had been made to Defendant about its practices regarding
  compensatory time-off—a complaint that was "arguably not properly submitted"—which
  called into question Plaintiffs' rights to recover liquidated damages.

- The release provision, provided above, was "sufficiently narrow" and reasonable in light of
  the foregoing considerations.

(Id.)

Plaintiffs subsequently filed the at-issue Motion, (doc. 43), and brief in support thereof,

(doc. 43-1), requesting $175,170 in attorneys' fees and $24,599.48 in costs for a total of $199,769,

(doc. 43-3).  Defendant filed a Response, (doc. 44), to which Plaintiffs replied, (doc. 46).  Plaintiffs

also submitted a supplemental request for an additional $10,585 in attorneys' fees.  (Doc. 46-2.)

Defendant then filed a Surreply, (doc. 48), and Plaintiffs filed a Sur-surreply with a second

supplemental request for attorneys' fees, (docs. 50, 50-2).

**DISCUSSION**

I.     **Attorneys' Fees**

Section 216(b) of the FLSA provides that a court "shall allow" a prevailing plaintiff to recover "reasonable" attorneys' fees and costs.  29 U.S.C. § 216(b); Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985) ("Section 216(b) of the [FLSA] makes fee awards mandatory for prevailing plaintiffs.").  Where the parties have agreed to settle an FLSA dispute, the plaintiff, in order to be considered a prevailing party, must obtain a stipulated or consent judgment from the court "evincing the court's determination that the settlement 'is a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions.'"  Mayer v. Wall St. Equity Grp., Inc., 514 F. App'x 929, 934 (11th Cir. 2013) (alteration in original) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)).  Here, the Court approved the parties' Agreement as fair and reasonable resolution, (see doc. 42), and Defendant does not dispute that Plaintiffs are entitled to fees per the Agreement, (see doc. 44).

When awarding fees under fee-shifting statutes like the FLSA, an amount known as the "lodestar" is generally recognized as "the reasonable sum the attorneys deserve."  Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008); see 29 U.S.C. § 216(b) (mandating that an award for fees and costs must be "reasonable").  The Court calculates the lodestar by "multiply[ing the] hours reasonably expended by a reasonable hourly rate."  Norman v. Housing Auth., 836 F.2d 1292, 1299 (11th Cir. 1988).  The determination of whether a fee is reasonable lies within "the sound discretion" of the district court.[3]  Kreager, 775 F.2d at 1543.  Indeed, "[c]ourts are not

---

[3]  This determination presumptively includes consideration of the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974).  See Bivins, 548 F.3d at 1352 ("The Johnson factors are to be considered in determining the lodestar figure . . . .");  Norman, 836 F.2d at 1299 (noting that the lodestar is the controlling figure but that the Johnson factors may "have utility").  Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to

4

authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." ACLU v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (assessing attorney's fees under 42 U.S.C. § 1988).  The burden of proof rests with Plaintiffs, the fee applicants, to show the reasonableness of both their requested hourly rate and the hours for which they seek compensation.  Loranger v. Stierheim, 10 F.3d 776, 781, 782 (11th Cir. 1994) (internal quotation marks omitted) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  A defendant, on the other hand, must be specific and reasonably precise in his objections regarding the reasonableness of a party's request for attorney's fees.  Barnes, 168 F.3d at 428.

After calculating the lodestar, the Court may adjust the amount upward or downward based on "the results obtained."  Loranger, 10 F.3d at 781.  "If the result was excellent, then the court should compensate for all hours reasonably expended.  If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive."  Norman, 836 F.2d at 1302. Finally, while the Court has "wide discretion in performing these calculations," it "must allow meaningful review . . . [by] articulat[ing] the decisions it made, giv[ing] principled reasons for those decisions, and show[ing] its calculation[s]."  Id. at 1304.

Here, Plaintiffs seek attorneys' fees for the work of four attorneys and seven paralegals. (Docs. 43-3, 46-2, 50-2.)  Plaintiffs calculated their fees by multiplying the numbers of hours that each person worked by what Plaintiffs submit are "reasonable hourly rates" for the Savannah market.  (See id. at pp. 10–12.)  As to the number of hours billed, Plaintiffs provided time sheets

---

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717–19.

for each individual attorney and paralegal. (See docs. 43-3; 43-6.) Each time entry contains a length of time, rounded to the nearest tenth of the hour, accompanied by a summary of what that timekeeper did during the requisite time period. (See docs. 43-3; 43-6.) Plaintiffs filed three separate fee requests: in their Motion, or original fee petition, Plaintiffs seek $175,170 in attorneys' fees for all of their work done to that point in the case, (doc. 43-3; Table 1); in their first supplemental fee request, Plaintiffs seek an additional $10,585 in fees for the time spent preparing the Reply brief, (doc. 46-2; Table 2); and in their second supplemental fee request, Plaintiffs seek $7,140 for work related to the Sur-surreply, (doc. 50-2). These three requests are respectively detailed in the tables below:

| Attorney Name | Year | Rate | Hours | Total |
|---|---|---|---|---|
| Greg McGillivary | 2019 | $350 | 5.6 | $1,960 |
| T. Reid Coploff | 2018 | $350 | 129.5 | $45,325 |
| | 2019 | $350 | 102.6 | $35,910 |
| Charles Herman | | $350 | 10.7 | $3,745 |
| Will Li | 2018 | $275 | 240.2 | $66,055 |
| | 2019 | $275 | 45.5 | $12,512.50 |
| Keith Nickerson | 2019 | $125 | 1.3 | $162.50 |
| Jamie Magnus | 2019 | $125 | 10.3 | $1,287.50 |
| Sandy Patel | 2018 | $125 | 5.1 | $637.50 |
| | 2019 | $125 | 9.6 | $1,200 |
| Ethan Trucker | 2019 | $125 | 8.3 | $1,037.50 |
| Shannon Dhillon | 2019 | $125 | 3.8 | $475 |
| Mary O'Brien | 2018 | $125 | 26.7 | $3,337.50 |
| | 2019 | $125 | 6.8 | $850 |
| Kathleen Dacruz | 2019 | $125 | 5.4 | $675 |
| | | | | $175,170 |

Table 1 (Doc. 43-3)

| Attorney Name | Year | Rate | Hours | Total |
|---|---|---|---|---|
| G. McGillivary | 2019 | $350 | 2.2 | $770 |
| T.  Coploff | 2019 | $350 | 27.9 | $9,765 |
| K.  Nickerson | 2019 | $125 | .4 | $50 |
| | | | | $10,585 |

Table 2 (Doc. 46-2)

| Attorney Name | Year | Rate | Hours | Total |
|---|---|---|---|---|
| G. McGillivary | 2019 | $350 | 1.4 | $490 |
| T. Coploff | 2019 | $350 | 19 | $6,650 |
| | | | | **$7,140** |

Table 3 (Doc. 50-2)

Defendant does not contest the availability of attorney's fees (or costs); rather, Defendant contends that Plaintiffs' requested hourly rates are excessive for the Savannah market and that, as a matter of law, Plaintiffs' proffered hours are unreasonable.  (See docs. 44, 46.)  The Court will address these arguments in turn, first determining the reasonable hourly rates and then examining the reasonableness of Plaintiffs' requested hours.

### A.    Reasonable Hourly Rates

The Eleventh Circuit Court of Appeals has instructed that a reasonable hourly rate is determined by "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Norman, 836 F.2d at 1299. In general, "the 'relevant market' for . . . an attorney's services is 'the place where the case is filed.'"  Barnes, 168 F.3d at 437 (quoting Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1491 (11th Cir. 1994)).  In this case, the relevant legal community is Savannah, Georgia.  (See doc. 1.) As noted above, Plaintiffs "bear[] the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates.  Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work[,]" and the evidence "must speak to rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate."  Norman, 836 F.2d at 1299.  However, the Court is considered "an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or

without the aid of witnesses as to value." Loranger, 10 F.3d at 781 (quoting Norman, 836 F.2d at 1303) (internal quotation marks omitted).

Plaintiffs seek the following rates, which they claim are based on the Savannah market: $350 per hour for McGillivary, Coploff, and Herman; $275 per hour for Li; and $125 per hour for the seven paralegals. (Doc. 43-3.) To show the reasonableness of these rates, Plaintiffs first offer evidence of each attorney's background and experience. At all times relevant to this action, all seven paralegals and three of the attorneys—McGillivary, Coploff, and Li—worked at McGillivary Steele Elkin LLP, a Washington, D.C.-based firm. (Doc. 43-2, pp. 1–2, 4, 6.) McGillivary is the managing partner at this firm and "has more than 30 years of civil litigation experience with a particular emphasis in [FLSA] wage and hour collective and class actions." (Doc. 43-2, p. 5.) Coploff graduated law school in 2009, became a partner at the firm in January 2018, and has "participated in the successful litigation of more than 50 FLSA actions on behalf of employees . . . throughout the country." (Id. at pp. 1–2.) Li graduated law school in 2010 and worked as Coploff's associate attorney from February 2016 to May 2019. (Id. at p. 6.) Plaintiffs did not provide information about any paralegal's experience or background. The fourth attorney, Charles Herman, was hired as local counsel. (See doc. 43-5.) Herman practices in Savannah, Georgia, and has "litigated employment law cases for nearly 13 years." (Id. at p. 2.)

Plaintiffs also filed affidavits from two local attorneys. (Id.; docs. 43-2, 46-3.) First, Plaintiffs offer Herman's declaration stating that, "based on [his] knowledge and experience," Plaintiffs' requested rates of "$350 per hour for partners[, ] $275 per hour for associates, and $125 per hour for paralegal work" are "within the prevailing market rate of the relevant community." (Doc. 43-5, p. 2.) Plaintiffs also offer the affidavit of Savannah attorney Wesley Woolf. (Doc. 46-3.) Woolf has practiced law since 1986 and has practiced employment law since 2009. (Id. at

pp. 3–4.)  According to Woolf, he "frequently and regularly" bills clients at a "rate of $300 per hour," but he believes "a rate of $350 per hour for the expertise and skill [he] bring[s] to [his] work is well within the range of pay for work . . . in this community."  (Id. at pp. 3–4.)  Woolf further states that his firm previously billed $275/hour for an associate attorney with six years of experience, and that he currently bills "at the rate of $95 per hour" for the work of his paralegal, who has nine years of experience.  (Id. at p. 5.)  Based on this "knowledge and experience," Woolf testifies that he believes Plaintiffs' requested rates are "within the prevailing market rate of the Savannah area and are reasonable for an FLSA wage and hour case."  (Id.)

Ultimately, Plaintiffs contend their requested rates reflect each attorney's "significant experience in labor and employment law" and the difficulty of litigating a "novel issue of law within the Eleventh Circuit."  (Doc. 43-1, pp. 9, 12–13.)  Plaintiffs also note that the hourly rates are "substantially lower than the fees that [P]laintiffs' counsel might otherwise seek in Washington, D.C."  (Id. at p. 10.)

In response, Defendant challenges Plaintiffs' proffered rates as excessive and requests that the Court reduce them to: $295/hour for McGillivary; $275/hour for Herman and Coploff; $225 for Li; and $85/hr for the paralegals.  (Doc. 44, pp. 5–13.)  Defendant contends that Herman's declaration is lacking in "any substantial support for the high hourly rates requested for himself or lead counsel" and is "self-serving," particularly since he stands to profit from the approval of a rate.  (Id. at pp. 6–7; doc. 48, p. 4.)  Defendant further argues that Woolf's testimony supports a reduction in rates, particularly because Woolf himself bills at rates lower than those requested by Plaintiffs.  (Doc. 48, p. 5.)  Finally, Defendant points to the affidavit of Kristen W. Goodman, filed as an exhibit to its Response.  (Doc. 44-2.)  Goodman, an attorney with over twenty-five years of experience, practices employment law and frequently handles cases in this District.  (Id. at p. 2.)

In her affidavit, Goodman opines that "the various hourly rates requested by the Plaintiffs' attorneys are not reasonable" because: (1) "[t]he FLSA claims presented here and the history of the case are not overly complicated or unique;" (2) neither party filed motions to compel or motions for summary judgment; and (3) the case settled before trial.  (Id. at p. 3.)  For these reasons, Goodman states that she believes a reasonable hourly rate for an attorney in Savannah with *her* experience would be between $285 and $300/hour, and that a reasonable rate for Coploff and Herman would be between $250-$280/hour.  (Id. at pp. 4–5.)  She also testified that a reasonable "hourly associate rate would be around $210–$225," and that a reasonable paralegal rate would be around $85 per hour.  (Id. at p. 5.)

After weighing Herman, Woolf, and Goodman's testimony, examining prior awards in this district, and relying on its own expertise, the Court finds that reductions in all of Plaintiffs' requested rates are appropriate.  See Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001) (district court did not abuse its discretion by assigning rates within the range articulated by opposing experts); Loranger, 10 F.3d at 781 (quoting Norman, 836 F.2d at 1303) (court entitled to rely on own expertise).

First, the Court reduces McGillivary, Coploff, and Herman's hourly rate from $350 to $300 and reduces Li's rate from $275 to $225 per hour.  See Neville v. McCaghren, No. CV 617-075, 2019 WL 1085197, at *1 (S.D. Ga. Mar. 7, 2019) (approving rates of $225 and $250 per hour in Statesboro and noting "the Court has previously approved" rates of $300 for Augusta and $250 for Savannah); Henry v. Cmty. of Hope Ctr., Inc., No. CV 314-118, 2017 WL 9482067, at *2 (S.D. Ga. Apr. 27, 2017) (setting rate at $275 for Dublin market); Plumbers & Steamfitters Local No. 150 Pension Fund v. Muns Grp., Inc., No. CV 1:15-0200, 2017 U.S. Dist. LEXIS 41258, at *3 (S.D. Ga. Mar. 22, 2017) (citing ECF No. 34-1) (reducing hourly rate for Augusta market to

$400/hour for attorneys with over forty years of experience and $300/hour for attorneys with twelve and fourteen years); Jackson v. Jump, No. CV 212-135, 2014 WL 10558844, at *3 (S.D. Ga. Sept. 30, 2014) (hourly rates of $150–$250 to be reasonable in Brunswick); Ojeda-Sanchez v. Bland Farms, No. 6:08-CV-96, 2013 WL 5652032, at *2 (S.D. Ga. Oct. 16, 2013) (citing ECF No. 375-5) (hourly rate of $275 reasonable in Statesboro for attorney with fourteen years of experience in subject); Savannah-Chatham Co. Fair Hous. Council v. Davis, No. 4:06-CV-18, 2007 WL 1288130, at *5 (S.D. Ga. 2007) (reducing Savannah rate to $250 per hour for attorneys with twenty-two and ten years of specialized experience).

As to the seven paralegals, Plaintiffs fail to present any evidence as to the respective levels of experience; absent a showing that any paralegal possesses some extraordinary qualifications or expertise, the Court finds it appropriate to reduce their hourly rate from $125 to $95. See United States v. Patrol Servs., Inc., 202 F. App'x 357, 364 (11th Cir. 2006) (affirming reduction of paralegal fee where no record of paralegal's experience); Plumbers & Steamfitters, 2017 U.S. Dist. LEXIS 41258, at *3 (applying uniform rate of $100 per hour); Jackson, 2014 WL 10558844, at *3 (approving rate of $85 per hour in Brunswick).

### B.  Hours Reasonably Expended on Litigation

The Court must next determine whether the hours expended by Plaintiffs' counsel, as set forth in their fee petition, were reasonable. See Perez v. Carey Int'l, Inc., 373 F. App'x 907, 910–11 (11th Cir. 2010) (noting that "the district court . . . must determine whether time was reasonably expended"). Once again, Plaintiffs "bear[] the burden of establishing [their] entitlement" to their requested hours. Norman, 836 F.2d at 1303. As such,

> fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for

each activity . . . A well-prepared fee petition would also include a summary,
grouping the time entries by the nature of the activity or stage of the case.

Barnes, 168 F.3d at 427 (quoting Norman, 836 F.2d at 1303). Said differently, fee applicants must

exercise billing judgment and "make a good faith effort to exclude from a fee request hours that

are excessive, redundant, or otherwise unnecessary[.]" Hensley, 461 U.S. at 434; see Columbus

Mills, Inc. v. Freeland, 918 F.2d 1575, 1580 (11th Cir. 1990) (quoting Norman, 836 F.2d at 1301)

("[T]he test for the reasonableness of the number of hours is whether the attorney excluded

'excessive, redundant or otherwise unnecessary' hours . . . from the amount claimed.")

Additionally, time spent on "discrete and unsuccessful claims" is not recoverable. Duckworth v.

Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996) (quoting Norman, 836 F.2d at 1301–02).

Where the hours claimed seem excessive or lack adequate documentation, it is within the

Court's discretion to "prune" the hours accordingly. Columbus Mills, 918 F.2d at 1580; see St.

Fleur v. City of Ft. Lauderdale, 149 F. App'x 849, 853 (11th Cir. 2005) (no abuse of discretion in

reducing hours for time spent on unsuccessful claims, duplicated efforts, excessive meetings

between attorneys, administrative tasks, and "billing at full rates for non-legal tasks like travel and

clerical functions"). Should the Court choose to do so, it may either "conduct an hour-by-hour

analysis" or "reduce the requested hours with an across-the-board cut." Bivins, 548 F.3d at 1350

(citing Loranger, 10 F.3d at 783). An across-the-board reduction is appropriate where billing

records are so voluminous that an hour-by-hour analysis would require the court to "engag[e] in

the pick and shovel work necessary to make a more precise determination." Kenny A. ex rel. Winn

v. Perdue, 532 F.3d 1209, 1220 (11th Cir. 2008). Blanket reductions are also appropriate where

imprecision in billing records makes it difficult for a district court to establish whether the amount

of time spent on any one task was reasonable. This occurs where entries are vague, fail to identify

an individual's contribution to the enumerated task, or "list[] all the day's tasks on a case in a

single entry," a practice known as "block billing." <u>Ceres Envtl. Servs. v. Colonel McCrary Trucking, LLC</u>, 476 F. App'x 198, 203–04 (11th Cir. 2012); <u>see</u> <u>Barnes</u>, 168 F.3d at 433 ("[M]issing from the billing records of all of the plaintiffs' attorneys is any indication of the distinct contribution each attorney made to the task of drafting the briefs.").

The fee documentation in this case undoubtedly qualifies as voluminous; Plaintiffs request compensation for a total of 662.3 hours billed by eleven timekeepers.  (Docs. 43-3, 46-2, 50-2.) Indeed, Plaintiffs' original fee petition, including the brief and supporting documentation, is 77 pages long.  (Docs. 43, 43-1, 43-2, 43-3, 43-4, 43-5, 43-6.)  Defendant's opposition brief and its exhibits span 332 pages, (docs. 44, 44-1, 44-2), and the parties' subsequent briefs and documents add up to 84 pages.  (Docs. 46, 48, 50.)  As such, an hour-by-hour analysis of Defendant's objections in this case would be "impractical and a waste of judicial resources." <u>Loranger</u>, 10 F.3d at 783; <u>see</u> <u>Padurjan v. Aventura Limousine & Transp. Serv.</u>, Inc., 441 F. App'x 684, 687 (11th Cir. 2011) ("The more than $200,000 [plaintiff] seeks in attorneys' fees is indication enough that this case is voluminous."); <u>Villano</u>, 254 F.3d at 1311 (district court not expected to conduct an hour-by-hour analysis on requested 569.3 hours).  Where, as here, a court decides to take an across-the-board approach, "it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction." <u>Loranger</u>, 10 F.3d at 783.

For the reasons set forth below, the Court finds the following across-the-board reductions of Plaintiffs' requested hours to be appropriate: a thirty percent (30%) reduction to the hours billed in Plaintiffs' initial fee petition, (doc. 43-3); a sixty percent (60%) reduction to the hours billed in Plaintiffs' first supplemental request, (doc. 46-3); and a one-hundred percent (100%) reduction to the hours billed in the second supplemental request, (doc. 50-2).

### (1)    Plaintiffs' Initial Fee Petition

Defendant argues that the hours in Plaintiffs' original fee petition should be reduced for several reasons.  First, Defendant argues that Plaintiffs' "bills are plagued with vague and block-billed entries."  (Doc. 44, p. 17.)  For example, in one entry, Li provided the following summary for an 8.9-hour period: "[a]nalyze documents regarding leave requests and compensatory time; create spreadsheet with chart of leave requests and daily roster sheets; draft deposition outline."  (Doc. 43-3, p. 22.)  In another entry, Coploff billed 13.7 hours to "[p]repare for, attend, and defend depositions of [specific plaintiffs]; review deposition documents; contact plaintiffs to schedule remaining depositions."  (Id. at p. 10.)  Defendant also cites entries, block-billed and otherwise, where Plaintiffs "vaguely identify 'clients' or 'witnesses' without proper delineation amongst the plaintiffs," or describe tasks with little to no detail.  (Doc. 44, pp. 21–22.)

Based on its own review of Plaintiffs' records, the Court agrees with Defendant's characterizations.  Coploff and Li—who cumulatively request compensation for over 400 hours—rely heavily on block billing, and their billing records are replete with entries similar to those cited above.  (See doc. 43-3, pp. 5–26.)  Plaintiffs argue that the inclusion of "more than one task in a single billing entry is not, in itself, evidence of [inappropriate] block billing . . . [where] a thorough description of the activities performed clarifies, rather than obscures, the record."  (Doc. 46, p. 18 (quoting Franklin v. Hartford Life Ins. Co., No. 807-CV-1400-T-23MAP, 2010 WL 916682, at *3 (M.D. Fla. Mar. 10, 2010).)  Be that as it may, Plaintiffs' block-billed entries are devoid of anything resembling a "thorough description."  Additionally, the Court identified over 70 hours-worth of work for a "plaintiff," "client," or "witness" without any identifying details, and even more hours with summaries like "prepare for deposition," or "review and edit [document]."  (See doc. 43-3.) These vague, non-descript entries preclude the Court from determining how the time was spent or

whether that time was reasonable.  See Dial HD, Inc. v. Clearone Communs., Inc., 536 F. App'x

927, 931 (11th Cir. 2013) (approving twenty-five percent reduction where plaintiffs "lump[ed]

together all tasks performed on a given day without specifying the amount of time spent on each

task"); Dream Custom Homes, Inc. v. Modern Day Const., Inc., No. 8:08-CV-1189-T-17AEP,

2013 WL 393916, at *5 (M.D. Fla. Jan. 8, 2013), report and recommendation adopted, 2013 WL

394014 (M.D. Fla. Jan. 31, 2013) (reducing hours for block-billed and/or vague entries where

billing records used phrases like "conferencing with counsel" and "prepare for oral argument" with

no additional information).

    Moreover, Plaintiffs' use of ambiguous language often fails to show that the attorneys "are

being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1302.  When

a client has more than one attorney, "the fee applicant has the burden of showing that the time

spent reflects the distinct contribution of each lawyer to the case and is the customary practice of

multiple-lawyer litigation, and this 'is not a make-believe burden.'" Jackson, 2014 WL 10558844,

at *7 (quoting Barnes, 168 F.3d at 432).  Defendants cited many instances where Plaintiffs failed

to meet this burden.  Some examples are: on November 29, 2018, Li billed 6.4 hours to "prepare

for and attend deposition of defendant's witness," (doc. 43-3, p. 23), and Coploff billed 7.6 hours

to "prepare for and take deposition of Hollis, (id. at p. 9); on December 18, 2018, both Li and

Coploff "prepare[d] for" and "defend[ed the] deposition[] of Marquez," (id. at pp. 10, 23); on

December 19, 2018, both Li and Coploff billed to "prepare and defend" the depositions of Hanks

and Miller, (id. at pp. 10, 23); and on September 4, 2019, McGillivary spent time "review[ing] part

of [fee petition] brief," while Coploff "review[ed] and edit[ed] fee petition documents," (id. at pp.

4, 16).  Looking at these entries "in comparison to one another, they lack the necessary detail to

show how each attorney's contributions were unique and necessary in the performance of the

aforementioned tasks," precluding a determination as to whether such hours are compensable. Jackson, 2014 WL 10558844, at *7; see Barnes, 168 F.3d at 432 ("Missing from the billing records of all of the plaintiffs' attorneys is any indication of the distinct contribution each attorney made to the task of drafting the briefs."). Accordingly, Plaintiffs' use of block-billing and vague language supports the Court's decision to apply an across-the-board reduction. See, e.g., Dial HD, Inc. v. Clearone Commc'ns, Inc., No. CV 109-100, 2012 WL 12898013, at *6 (S.D. Ga. Dec. 26, 2012), aff'd, 536 F. App'x 927 (11th Cir. 2013) (across-the-board reduction of 25% appropriate in light of court's inability to determine reasonableness of certain entries).

Defendant further objects to the volume of hours that Plaintiffs billed—specifically, 109.5—for "duplicative conversations," and other internal attorney communications. (Doc. 44, pp. 15–16.) While "time spent in attorney conferences is generally compensable for each participant," the time entries for such conferences must provide sufficient detail "in order to determine the nature and need for the conference and, concomitantly, the reasonableness of the time expenditure." Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F. Supp. 2d 1301, 1315, 1319 (M.D. Fla. 2003); see also Tchemkou v. Mukasey, 517 F.3d 506, 512 (7th Cir. 2008) ("[A]ttorneys seeking reimbursement for internal meetings should identify explicitly the subject matter of their discussions so that [the Court] may assess whether the amount of time recorded was 'reasonably expended.'"). "This is of special concern" where, as here, "the plaintiffs seek reimbursement for a plethora of attorney conferences" that are described only "by reference to a particular phase of the litigation, such as 'telephone call with E.M. re: complaint.'" Am. Charities, 278 F. Supp. 2d at 1319.

Here, the Court's review of Plaintiffs' records confirms that Plaintiffs billed over 100 hours for tasks with surface-level descriptions like "office conferences re: strategy" or "email

correspondence re: complaint" and that, on several occasions, more than one timekeeper billed for the same conversation or conference. (Doc. 43-3, pp. 4–26.) In their Reply, Plaintiffs contend that such time was reasonable because the case "was vigorously litigated until the verge of summary judgment." (Doc. 46, pp. 15–16.) This argument offers no guidance as to the "nature [of] and need" for their 100+ hours of internal communications, nor does it address Defendant's contentions that such time was excessive. See Am. Charities, 278 F. Supp. 2d at 1319. As such, the Court has no basis for determining the reasonableness of these billing entries, providing an additional reason to reduce Plaintiffs' hours. Compare Duckworth, 97 F.3d at 1398 (reduction of hours for "myriad of telephone conferences" warranted), In re Meese, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (court cannot determine reasonableness of hours where "no mention [was] made of the subject matter of a meeting, telephone conference or the work performed during hours billed"), and Nail v. Shipp, No. 17-00195-KD-B, 2020 WL 1670459, at *12 (S.D. Ala. Apr. 3, 2020) (finding a "50% across-the-board reduction" appropriate where, among other things, "the billing records reflect[] a multitude of overlapping conferences, email exchanges between counsel, phone calls, and other strategy sessions"), with Williams v. R.W. Cannon, Inc., 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009) (plaintiff could recover fees for internal communications and conferences where Plaintiffs showed that meetings were "reasonably necessary" and only billed for "one attorney at a time, not for each of the attorneys that attended the conference").

Next, Defendant takes issue with time billed by Plaintiffs' counsel and paralegals for non-billable administrative or clerical work. (Doc. 44, pp. 19–20.) It is well-established that "a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." Norman, 836 F.2d at 1306. Additionally, "[w]ork by paralegals is

recoverable . . . only to the extent that the paralegal performs work traditionally done by the attorney." B&F Sys., Inc., v. LeBlanc, No. 7:07-cv-192, 2012 WL 2529191, at *10 (M.D. Ga. June 29, 2012). Thus, neither an attorney nor a paralegal may recover attorney's fees for time spent on work that is secretarial or clerical in nature, like: filing or mailing documents; organizing files; administrative phone calls; and scheduling. See id. (disallowing time for "filing documents on CM/ECF, creating binders, telephone calls with the Clerk of Court and the undersigned's chambers, telephone calls with court reporters, and drafting form pleadings"); Drew v. Mamaroneck Capital, LLC, No. 5:17-CV-149 (MTT), 2018 WL 3232779, at *14 (M.D. Ga. July 2, 2018) (counsel could not recover for mailing or filing documents); Martin v. Augusta-Richmond County Comm'n, No. CV 112-058, 2012 WL 5950408, at *7 n.4 (S.D. Ga. Nov. 28, 2012) (reducing hours for time spent "gathering, copying, mailing, and filing documents").

  Here, the Court's review of Plaintiffs' time entries revealed that both attorneys and paralegals billed for non-compensable tasks. For example, Coploff's fee summaries are replete with entries related to scheduling depositions, (doc. 43-3, pp. 7–8), and Li regularly billed for filing and serving documents, (id. at pp. 17–26). Additionally, Li had two entries for communicating "with clerk of court regarding name change for firm." (Id. at p. 25.) As for the paralegals, their hours encompass tasks such as scheduling calls or depositions; requesting, organizing, and/or filing documents; and updating case files or client contact information. (Id. at pp. 26–35.) These non-billable hours cannot be considered "reasonable" for purposes of attorneys' fees, and the Court is satisfied that the percentage-based reduction will compensate for their inclusion in Plaintiffs' fee petition.

  Finally, Defendant objects to Plaintiffs' hours as generally excessive and unreasonable. (Doc. 44, pp. 14–16, 20–21.) In response, Plaintiffs point to Coploff's sworn statement that "[a]ll

of the time and expenses . . . [were] reasonably expended on behalf of the plaintiffs." (Doc. 43-2, p. 7.) Moreover, Plaintiffs repeatedly claim to have exercised sound billing judgment by omitting excessive entries or entries related to the dismissed parties. (Doc. 43-1, p. 8; doc. 46, p. 15.) However, the only proof on the matter is Coploff's testimony that he did so, (doc. 43-2). While sworn testimony is evidence of considerable weight, Perkins v. Mobile Housing Bd., 847 F.2d 735, 738 (11th Cir. 1988), "giving weight to sworn statements of fee applicants does not mean accepting those statements as gospel," Barnes, 168 F.3d at 430.

Here, Coploff's statement is not enough to wholly convince the Court that Plaintiffs "ma[d]e a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Hensley, 461 U.S. at 434. First, Coploff's credibility is undermined by the fact that Plaintiffs, ironically, seek compensation for the time that Coploff spent *eliminating excess hours*. (Doc. 43-3, p. 16.) Additionally, despite Defendant's persistent objections about excessive entries and a general lack of specificity of Plaintiffs' billing entries, Plaintiffs did not revise their time sheets or otherwise provide any additional documentation or explanations. See Walker v. United States Dep't of Hous. & Urban Dev., 99 F.3d 761, 770 (5th Cir. 1996) ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."); see also Mamaroneck Capital, 2018 WL 3232779, at *5–6 (explaining that, in response to objections about vague entries and administrative tasks, Plaintiffs provided "supplemental time summary" with further explanations); Mauricio v. Phillip Galyen, P.C., 174 F. Supp. 3d 944, 950 (N.D. Tex. 2015) (explaining, "[i]deally, billing judgment is reflected in the fee application, showing not only hours claimed, but hours written off" (quoting Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990)); Jackson, 2014 WL 10558844, at *1 (noting the court required plaintiffs to submit "an

19

exhibit showing which time entries they eliminated in the exercise of billing judgment"); <u>Taylor v. Fulton County</u>, No. 1:08-CV-3242-RLV-CCH, 2012 WL 13075231, at *5 (N.D. Ga. Jan. 31, 2012), <u>report and recommendation adopted</u>, 2012 WL 13072119 (N.D. Ga. Feb. 29, 2012) (relying on own expertise to reduce hours as "there [was] no evidence, other than counsel's assurance, that time was written off in accordance with his judgment").

Ultimately, Plaintiffs are only entitled to compensation for hours they can show are "reasonable," and "the test for the reasonableness of the number of hours is whether the attorney excluded 'excessive, redundant or otherwise unnecessary' hours . . . from the amount claimed." <u>Columbus</u>, 918 F.2d at 1580 (quoting <u>Norman</u>, 836 F.2d at 1301). Here, Plaintiffs have not made that showing. Thus, for the foregoing reasons, the Court will reduce the hours requested in Plaintiffs' initial fee petition, (doc. 43-1), by thirty percent (30%). <u>See</u> <u>St. Fleur</u>, 149 F. App'x at 853 (approving across-the-board reduction of thirty percent); <u>Norman v. Alorica, Inc.</u>, No. CIV.A. 11-00433-KD-C, 2012 WL 5452196, at *7 (S.D. Ala. Nov. 7, 2012) (reducing "the number of hours billed . . . by each billing attorney" by 50%); <u>Lil' Joe Wein Music, Inc. v. Jackson</u>, No. 06-20079-CIV, 2008 WL 2688117, at *13 (S.D. Fla. July 1, 2008) (applying across-the-board reduction of twenty percent due to block billing); <u>Access for the Disabled, Inc. v. Missouri Mart, Inc.</u>, No. 8:05-CV-392-T-23MSS, 2006 WL 5432711, at *2 (M.D. Fla. Dec. 7, 2006) (applying fifty percent reduction in fees "based on extrapolation from a representative sampling of the time entries provided").

### (2)    Supplemental Fee Requests

As noted above, Plaintiffs submitted two supplemental fee requests for hours spent litigating the issue of attorneys' fees. (<u>See</u> docs. 46-2, 50-2.) In general, a prevailing party is entitled to attorneys' fees for the time spent preparing the fee petition, often referred to as "fees on

fees." See Norelus v. Denny's, Inc., 628 F.3d 1270, 1301 (11th Cir. 2010) (discussing cases allowing fees for preparing fee petitions); see also Williams, 657 F. Supp. 2d at 1318 (awarding fees to party for filing post-trial motion on fees). However, "[a] request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437.

Plaintiffs first request additional fees in their Reply, seeking an additional $10,585.00 in fees for the attorneys' work preparing that brief. (Doc. 46, p. 1.) The billing records, displayed in Table 2, *supra*, indicate that McGillivary seeks compensation for 2.2 hours, Coploff seeks compensation for 27.9 hours, and a paralegal seeks compensation for .4 hours. (Doc. 46-2, p. 2.) Defendant objects to these fees as "excessive and inappropriate." (Doc. 48, p. 16.) The Court agrees; the issues in the Reply brief are not overly complex so as to justify the combined 30 hours billed. (See doc. 46.) Rather, the brief is substantially similar to Plaintiffs' initial Motion and accompanying brief. (Id.; see doc. 43-1.) Moreover, like the billing records for the original fee petition, the time entries are vague, block-billed, and/or clerical in nature. (Doc. 46-2.) Accordingly, the Court shall reduce the hours in Plaintiffs' first supplemental fee request—i.e. the hours billed for tasks related to the Reply brief—by sixty percent (60%). See Rodriguez v. Marble Care Int'l, Inc., 863 F. Supp. 2d 1168, 1189 (S.D. Fla. Feb. 22, 2012) (separately addressing additional requests for fees); Wolff v. Royal Am. Mgmt., Inc., No. CV-11-351-N, 2012 WL 5303665, at *8 (S.D. Ala. Oct. 25, 2012), aff'd, 545 F. App'x 791 (11th Cir. 2013) (reducing both initial and supplemental fee requests by 60%); Xiao-Yue Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 770 (D. Md. Feb. 1, 2001) (finding the hours in original petition reasonable but reducing supplemental petition by 40%).

Plaintiffs also request fees in their Sur-surreply; Coploff seeks compensation for 19 hours while McGillivary seeks compensation for 1.4 hours. (Doc. 50-2.) Similar to their first

supplemental request, Plaintiffs spent over twenty hours on a brief that does not meaningfully diverge from their two previous filings and does not present any novel—or helpful—arguments. (Doc. 50.) As such, the Court finds that Plaintiffs have not shown any of these fees to be reasonable and denies this request in its entirety by applying a one hundred percent (100%) reduction.

### C.    Calculating the Lodestar

At this point, the Court must calculate the lodestar. This is done by multiplying each timekeeper's reasonable hourly rate by "[the] hours reasonably expended" by each timekeeper—an amount calculated by reducing the requested amount by the pre-determined percentages. See Norman, 836 F.2d at 1299. As demonstrated by the tables of calculations below, the lodestar figure amounts to an award of $110,919.00.

| Attorney Name | Year | Rate | | Hours (reduced by 30%) | | Total | |
|---|---|---|---|---|---|---|---|
| Greg McGillivary | 2019 | $350 | $300 | 5.6 | 3.92 | $1,960 | $1,176 |
| Theo Coploff | 2018 | $350 | $300 | 129.5 | 90.6 | $45325 | $27,180 |
| | 2019 | $350 | $300 | 102.6 | 71.82 | $35,910 | $21,540 |
| Charles Herman | | $350 | $300 | 10.7 | 7.5 | $3,745 | $2,250 |
| Will Li | 2018 | $275 | $250 | 240.2 | 168.1 | $66,055 | $42,025 |
| | 2019 | $275 | $250 | 45.5 | 31.8 | $12,512.50 | $7,950 |
| Paralegals | 2018–19 | $125 | $95 | 77.3 | 54.2 | $9,662.50 | $5,149 |
| | | | | | | $175,170 | $107,270 |

Table 4: Lodestar Calculation of Initial Fee Petition

| Attorney Name | Year | Rate | | Hours (reduced by 60%) | | Total | |
|---|---|---|---|---|---|---|---|
| G. McGillivary | 2019 | $350 | $300 | 2.2 | .9 | $770 | $270 |
| T. Coploff | 2019 | $350 | $300 | 27.9 | 11.2 | $9,765 | $3,360 |
| K. Nickerson | 2019 | $125 | $95 | .4 | .2 | $50 | $19 |
| | | | | | | $10,585 | $3,649 |

Table 5: Lodestar Calculation of First Supplemental Fee Request

| Initial Fee Petition Total | First Supplemental Request Total | Lodestar |
|---|---|---|
| $107,270 | $3,649 | **$110,919** |

Table 6: Total

After calculating the lodestar, the Court may adjust the amount upward or downward based on "the results obtained" by the prevailing party. <u>Loranger</u>, 10 F.3d at 781. However, because a lodestar carries a strong presumption of reasonableness, "courts have severely limited the instances in which a lawfully found lodestar amount may be adjusted" in either direction. <u>Resolution Trust Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1150 (11th Cir. 1993). "If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." <u>Norman</u>, 836 F.2d at 1302. Said differently, the Court, in its discretion, may reduce the lodestar amount if it believes that amount is excessive in relation to the Plaintiffs' relief. <u>See</u> <u>Popham v. City of Kennesaw</u>, 820 F.2d 1570, 1578–79 (11th Cir. 1987).

Here, the Court sees no reason to adjust the lodestar based on the quality of the results obtained by Plaintiffs in this matter. As explained in the Order approving the Agreement, (doc. 42), Plaintiffs' counsel obtained a reasonable, fair result for their clients that included compensation. While that compensation was less than the fee award, counsel obtained prospective relief for Plaintiffs and addressed the core issue that led to this dispute—the denial of compensatory time. <u>See</u> <u>Duckworth</u>, 97 F.3d at 1399 (affirming lower court's decision not to adjust lodestar where, even though ultimate recovery was below damages sought, the outcome promoted a public purpose). Accordingly, Plaintiffs are entitled to $110,919.00 in attorneys' fees.

## II.     Costs and Expenses

In addition to attorneys' fees, Plaintiffs seek costs pursuant to Section 216(b).  (Doc. 43-1, pp. 14–16.)  Specifically, Plaintiffs request:

| | |
|---|---|
| Cell Calls | $202.34 |
| Certificates of Good Standing | $132.00 |
| Court Records Accessed Electronically | $16.50 |
| Deposition Transcripts | $7,646.80 |
| Federal Express | $474.13 |
| Filing Fee | $400.00 |
| Postage | $19.78 |
| Taxis | $19.30 |
| Travel Expenses | $15,688.63 |
| | **Total:** $24,599.48 |

Table 7 (Doc. 43-4)

Defendants oppose Plaintiffs' request, arguing that Plaintiffs failed to prove that such costs were necessary or reasonable.  (Doc. 44, pp. 22–23.)

Under Section 216(b), Plaintiffs may also recover the "costs of the action."  The costs recoverable in FLSA cases under Section 216(b) are limited to those costs enumerated in 28 U.S.C. § 1920.  See Mock v. Bell Helicopter Textron, Inc., 456 F. App'x 799, 802 (11th Cir. 2012) ("[T]his Court has clearly held that cost recovery [under Section 216(b)] is limited by 28 U.S.C. § 1920." (citing Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1575 (11th Cir. 1988)); see also U.S. EEOC v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000) ("[A] court may only tax costs as authorized by statute.").  Section 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Here, many of Plaintiffs' costs do not fall within the purview of Section 1920 and are therefore not recoverable. See Jackson, 2014 WL 10558844, at *9 ("Several of the expense items for which Plaintiffs seek compensation are not taxable as costs under 28 U.S.C. § 1920 and thus not compensable."). Specifically, Plaintiffs are not entitled to compensation for: cell phone calls; postage; delivery; electronic records; taxis; or travel expenses. See Mock, 456 F. App'x at 802, 804 (district court properly excluded non-local counsel's travel expenses from cost calculation); Gary Brown & Assocs. v. Ashdon, Inc., 268 F. App'x 837, 846 (11th Cir. 2008) (district court did not abuse discretion in determining that "mediation expenses, meals, courier/postage, Lexis-Nexis research, air fare, and lodging are not included under § 1920"); Duckworth, 97 F.3d at 1399 (postage and computerized legal research not compensable under Section 1920); Nail, 2020 WL 1670459, at *12 (plaintiffs could not recover "attorney travel/flights/baggage fees, lodging (hotel), meals, postage, rental cars, hired cars/Uber ride sharing services . . ., PACER charges, parking, supplies, gasoline, mileage, [or] computer research" as costs); Cobb v. City of Roswell, 987 F. Supp. 2d 1319, 1327 (N.D. Ga. 2013) (disallowing attorney travel expenses as taxable costs and noting that, unlike other statutes, Section 216(b) does not mention the recovery of expenses); Maciejczyk v. You Fit, Inc., No. 8:12-CV-1462-T-27MAP, 2013 WL 7186419, at *5 (M.D. Fla. Dec. 12, 2013), report and recommendation adopted, 2014 WL 585067 (M.D. Fla. Feb. 12, 2014) (counsel could not recover costs for "postage, courier service, unspecified photocopies, and Fed[eral] Ex[press]").

Similarly, while the $400 fee associated with the filing of the Complaint is recoverable as a "fee[] of the clerk," fees for Certificates of Good Standing—obtained so that Plaintiffs' counsel could appear pro hac vice, (doc. 43-3, p. 32)—are not. See Nail, 2020 WL 1670459, at *11 (citing cases and noting that "pro hac vice fees are non-recoverable"); Maciejczyk, 2013 WL 7186419, at *5 (noting that "non-recoverable costs include[e] pro hac vice admission to this Court, obtaining a Certificate of Good Standing from the Alabama State Bar"); Eagle Ins. Co. v. Johnson, 982 F. Supp. 1456, 1459 (M.D. Ala. 1997), aff'd, 162 F.3d 98 (11th Cir. 1998) (finding no statute to authorize compensation for certificate of good standing or pro hac vice filing fees).[4]

Finally, Plaintiffs may recover $7,646.80 in costs for their deposition transcripts pursuant to Section 1920(c). Adding that amount to the $400 filing fee, Plaintiffs are entitled to $8,046.80 in taxable costs.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for Attorneys' Fees and Costs, (doc. 43). The Court **GRANTS** Plaintiffs' request for an award of attorneys' fees and supplemental attorneys' fees in the amount of $110,919.00, and costs in the amount of $8,046.80, for a total of **$118,965.80**. The Court **DENIES** Plaintiffs' Motion as to any requested fees or costs in excess of that amount. Additionally, in light of the parties'

---

[4] While it is well-established that Plaintiffs may not recover these expenses as *costs*, it is an open question within this Circuit as to whether such expenses may be awarded as *attorneys' fees* in FLSA cases. Compare Lockwood v. CIS Servs., LLC, No. 3:16-CV-965-J-39PDB, 2019 WL 2226126, at *8 (M.D. Fla. May 3, 2019), report and recommendation adopted by, 2019 WL 3383628 (M.D. Fla. Jun. 13, 2019) (allowing expenses in FLSA fee award despite recognizing that no "binding precedent expressly holds attorney expenses are recoverable under § 216(b) as attorney's fees"), and Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1313, 1329 (M.D. Fla. 2001) (things like copies and travel are "litigation expenses," rather than "costs," that are recoverable as part of the reasonable attorneys' fee award), with Mock 456 F. App'x at 802 (holding that "the district court did not err in refusing to award [travel] expenses as part of Mock's attorneys' fees, rather than costs"), and Nail, 2020 WL 1670459, at *12 n.7 (noting that while expenses are recoverable as attorneys' fees under 42 U.S.C. § 1988, no precedent exists to do so under the FLSA), and Williams, 657 F. Supp. 2d at 1317–18 (conducting thorough analysis of Circuit precedent and disagreeing with Wales). However, as the parties did not raise this issue, the Court need not wade into this controversy.

Settlement Agreement, (doc. 41-1), and the Court's approval thereof, (42), the Court **DISMISSES** this action **with prejudice** subject to the Court's ability to enforce the terms of the settlement agreement.  The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

      **SO ORDERED**, this 16th day of July, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA